United States Bankruptcy Court
Eastern District of Pennsylvania

In re:                                                                    Case No. 14-16081-mdc
Barry Portnoy                                                             Chapter 7
            Debtor

# CERTIFICATE OF NOTICE

District/off: 0313-2          User: PaulP              Page 1 of 2              Date Rcvd: Oct 18, 2016
                             Form ID: pdf900          Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Oct 20, 2016.
db          +Barry Portnoy,   101 Edwards Drive,   Richboro, PA 18966-1174

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                    TOTAL: 0

        ***** BYPASSED RECIPIENTS *****
NONE.                                                                                    TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Oct 20, 2016                          Signature:  /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on October 18, 2016 at the address(es) listed below:
          ANDREW F GORNALL    on behalf of Creditor   M&T BANK agornall@kmllawgroup.com,
           bkgroup@kmllawgroup.com
          DAVID B. SMITH    on behalf of Attorney   SMITH KANE HOLMAN, LLC dsmith@smithkanelaw.com
          DAVID L. BRAVERMAN    on behalf of Debtor Barry  Portnoy dbraver@braverlaw.com,
           dmarano@braverlaw.com;dmayfield@braverlaw.com;belle@braverlaw.com;gollotto@braverlaw.com;sine@bra
           verlaw.com
          DAVID L. BRAVERMAN    on behalf of Defendant Barry  Portnoy dbraver@braverlaw.com,
           dmarano@braverlaw.com;dmayfield@braverlaw.com;belle@braverlaw.com;gollotto@braverlaw.com;sine@bra
           verlaw.com
          GAETAN J. ALFANO    on behalf of Attorney Michael E. Carson, Esquire GJA@Pietragallo.com
          GAETAN J. ALFANO    on behalf of Creditor Michael  Carson GJA@Pietragallo.com
          GARY DAVID BRESSLER    on behalf of Interested Party   Bonnie B. Finkel, Chapter 7 Trustee of the
           bankruptcy estate of Demrex Industrial Services, Inc. gbressler@mdmc-law.com,
           kdeans@mdmc-law.com;sshidner@mdmc-law.com;smullen@mdmc-law.com;jangelo@mdmc-law.com
          GARY F SEITZ    on behalf of Trustee ROBERT H. HOLBER gseitz@gsbblaw.com,  hsmith@gsbblaw.com
          GARY F SEITZ    on behalf of Plaintiff Robert H. Holber gseitz@gsbblaw.com,  hsmith@gsbblaw.com
          GILBERT B. WEISMAN    on behalf of Creditor   American Express Bank FSB notices@becket-lee.com
          HOLLY ELIZABETH SMITH    on behalf of Trustee ROBERT H. HOLBER hsmith@gsbblaw.com
          HOLLY ELIZABETH SMITH    on behalf of Plaintiff Robert H. Holber hsmith@gsbblaw.com
          JASON BRETT SCHWARTZ    on behalf of Creditor   The Bank of New York Mellon
           jschwartz@mesterschwartz.com,  jottinger@mesterschwartz.com
          JEFFREY  KURTZMAN    on behalf of Defendant Samantha  Portnoy Kurtzman@kurtzmansteady.com
          JEFFREY  KURTZMAN    on behalf of Defendant   Altchem Environmental Services, Inc.
           Kurtzman@kurtzmansteady.com
          JEFFREY  KURTZMAN    on behalf of Defendant   Samzach Partners, L.P. Kurtzman@kurtzmansteady.com
          JEFFREY  KURTZMAN    on behalf of Defendant   BF Services, L.P. Kurtzman@kurtzmansteady.com
          JEFFREY  KURTZMAN    on behalf of Defendant   Sam-Zachary Partners, LLC Kurtzman@kurtzmansteady.com
          JEFFREY  KURTZMAN    on behalf of Interpleader Danielle  Portnoy Kurtzman@kurtzmansteady.com
          JEFFREY  KURTZMAN    on behalf of Interpleader   SamZach Irrevocable Trust
           Kurtzman@kurtzmansteady.com
          JEFFREY  KURTZMAN    on behalf of Defendant Zachary  Portnoy Kurtzman@kurtzmansteady.com
          JEFFREY  KURTZMAN    on behalf of Defendant   Maxsys, Inc. Kurtzman@kurtzmansteady.com
          JEFFREY  KURTZMAN    on behalf of Defendant Danielle  Portnoy Kurtzman@kurtzmansteady.com
          JEROME B. BLANK    on behalf of Creditor   Wilmington Savings Fund Society, et. al. paeb@fedphe.com
          JOHN E. KASKEY    on behalf of Defendant Barry  Portnoy Jkaskey@braverlaw.com,
           dmarano@braverlaw.com;gollotto@braverlaw.com;belle@braverlaw.com;sine@braverlaw.com
          JOHN E. KASKEY    on behalf of Debtor Barry  Portnoy Jkaskey@braverlaw.com,
           dmarano@braverlaw.com;gollotto@braverlaw.com;belle@braverlaw.com;sine@braverlaw.com
          JOHN E. KASKEY    on behalf of Attorney   Braverman Kaskey PC Jkaskey@braverlaw.com,
           dmarano@braverlaw.com;gollotto@braverlaw.com;belle@braverlaw.com;sine@braverlaw.com
          JON M. ADELSTEIN    on behalf of Attorney   Adelstein & Kaliner, LLC
           jadelstein@adelsteinkaliner.com,  jsbamford@adelsteinkaliner.com

```
District/off: 0313-2        User: PaulP            Page 2 of 2             Date Rcvd: Oct 18, 2016
                           Form ID: pdf900         Total Noticed: 1
```

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system (continued)

```
          JON M. ADELSTEIN    on behalf of Attorney Michael E. Carson, Esquire
           jadelstein@adelsteinkaliner.com,  jsbamford@adelsteinkaliner.com
          JONATHAN W. HUGG    on behalf of Plaintiff    Republic First Bank, d/b/a Republic Bank
           jhugg@clarkhill.com,  sradcliff@clarkhill.com;aporter@clarkhill.com;
          JONATHAN W. HUGG    on behalf of Creditor    Republic First Bank d/b/a Republic Bank
           jhugg@clarkhill.com,  sradcliff@clarkhill.com;aporter@clarkhill.com;
          JOSEPH ANGEO DESSOYE    on behalf of Creditor    Wilmington Savings Fund Society, et. al.
           paeb@fedphe.com
          JOSHUA B. KAPLAN    on behalf of Debtor Barry  Portnoy kaplan@braverlaw.com,
           powell@braverlaw.com;belle@braverlaw.com;marano@braverlaw.com
          JOSHUA B. KAPLAN    on behalf of Defendant Barry  Portnoy kaplan@braverlaw.com,
           powell@braverlaw.com;belle@braverlaw.com;marano@braverlaw.com
          JOSHUA ISAAC GOLDMAN    on behalf of Creditor    M&T BANK bkgroup@kmllawgroup.com,
           bkgroup@kmllawgroup.com
          KATHERINE  KAKISH    on behalf of Creditor    State of Michigan, Department of Treasury
           kakishk@michigan.gov
          KEVIN P. CALLAHAN    on behalf of Plaintiff Andrew R. Vara kevin.p.callahan@usdoj.gov
          KEVIN P. CALLAHAN    on behalf of U.S. Trustee    United States Trustee kevin.p.callahan@usdoj.gov
          KEVIN P. CALLAHAN    on behalf of  Andrew R. Vara kevin.p.callahan@usdoj.gov
          LYNDSAY ELIZABETH ROWLAND    on behalf of Creditor    Wells Fargo Equipment Finance, Inc.
           lrowland@starfieldsmith.com,  lstarkman@lammlaw.com
          MARIO J. HANYON    on behalf of Creditor    Wilmington Savings Fund Society, et. al. paeb@fedphe.com
          MATTHEW R. SKOLNIK    on behalf of Creditor    Wilentz, Goldman & Spitzer P.A. mskolnik@wilentz.com,
           jmcbride@wilentz.com;lcasey@wilentz.com;dbernheim@wilentz.com
          MICHAEL H. KALINER    on behalf of Attorney    Adelstein & Kaliner, LLC mhkaliner@gmail.com
          REBECCA  PRICE    on behalf of Creditor    Bank of the West rprice@thslaw.com
          ROBERT H. HOLBER    trustee@holber.com,  rholber@ecf.epiqsystems.com
          ROBERT H. HOLBER    on behalf of Trustee ROBERT H. HOLBER trustee@holber.com,
           rholber@ecf.epiqsystems.com
          ROBERT J. KRANDEL    on behalf of Interpleader Danielle  Portnoy rkrandel@fmglaw.com,
           mgood@fmglaw.com;biacono@fmglaw.com
          SARAH R. GOODMAN    on behalf of Creditor Michael  Carson SRG@Pietragallo.com,  BLR@Pietragallo.com
          STEFAN  RICHTER    on behalf of Creditor    Southampton Industrial Mews Condominium Association
           srichter@clemonslaw.com
          STEVEN E. OSTROW    on behalf of Interested Party    EVC Turnpike Dr., LLC
           ostrows@whiteandwilliams.com
          United States Trustee    USTPRegion03.PH.ECF@usdoj.gov
                                                                              TOTAL: 51
```

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | Chapter 7 |
| BARRY C. PORTNOY, Debtor | Case No. 14-16981-MDC |

### ORDER (I) APPROVING CARVE-OUT AGREEMENT, SALE AGREEMENT AND SALE OF CERTAIN PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND (II) GRANTING RELATED RELIEF

Upon consideration of (i) the Motion for Entry of Order Authorizing Robert H. Holber, Chapter 7 Trustee to Sell Real Property Located at 1320B Industrial Boulevard, Upper Southampton, PA 18966 Free and Clear of Liens, Claims, and Interests and for Approval of the Carve-Out Agreement with First Republic Bank [Dkt. No. 342] (the "Sale Motion") filed by Robert H. Holber, Chapter 7 Trustee (the "Trustee") of the Estate of Barry C. Portnoy (the "Debtor"); (ii) the Carve-out agreement with First Republic Bank (as defined in the Sale Motion)(the "Carve-out")(iii) the sale (the "Sale") to EVC Turnpike Dr., LLC (the "Buyer") of the Property consisting of an industrial condominium unit designated as 1320 Industrial Blvd. Building Bay Number 2 of Southampton Industrial Mews, a Condominium, situate in the Township of Upper Southampton, County of Bucks, Pennsylvania, and certain other related real and personal property pursuant to an Agreement of Sale – NonResidential Condominium Unit dated September 30, 2016, and Bankruptcy Trustee Addendum thereto attached hereto as Exhibit A (collectively, as amended, the "Sale Agreement")[1], (iv) the Court having conducted a hearing

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Sale Agreement.

on the Sale Motion on October 17, 2016 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Sale Motion and the Sale Agreement; (v) the Court having reviewed and considered the Sale Motion, the Sale and the Sale Agreement and the arguments of counsel made, and the evidence adduced at, the Sale Hearing; and (vi) upon the record of the Sale Hearing and this Chapter 7 proceeding, and after due deliberation thereon, and good cause appearing therefor; it is hereby **FOUND AND DETERMINED THAT**:

A.    **Jurisdiction and Venue.** The Court has jurisdiction over the Sale Motion and the Sale pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§1408 and 1409.

B.    **Notice.** Proper, timely, adequate, and sufficient notice of the Sale Motion, including, without limitation, the Sale contemplated under the Sale Agreement, that the Sale was subject to higher and better offers, the Sale Hearing, and of the proposed entry of this Order have been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006-9007 and 9019, and Local Rules 6004-1 and 9014-3. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, including, without limitation, the Sale, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

C.    **Title to the Property**. The Property that is subject to the Sale Agreement constitutes the property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

**D.**    **Business Justification.**  The Trustee has demonstrated good cause for him to enter into the Carve-out and the Sale Agreement, and to sell the Property under section 363 of the Bankruptcy Code.  Such actions are reasonable and appropriate exercises of the Trustee's business judgment and in the best interests of the Debtor's estate and its creditors.

**E.**    **Opportunity to Bid.**  The Sale of the Property to 1320B Acquisition Holdings LLC (the "Staking Horse Bidder") was subject to higher and better offers.  After the Sale Motion was filed, the Trustee received competing offer(s) or bid(s) for the Property (or any portion thereof) from the Buyer and other third party bidder(s) (collectively, the "Competing Bidders"), who were afforded a full and fair opportunity to make a higher or otherwise better offer to purchase the Property.

**F.**    **Highest and Best Offer.**  The Buyer submitted the highest and otherwise best offer for the Property, and the Buyer is the successful bidder for the Property.  The total consideration provided by the Buyer for the Property is the highest and otherwise best offer received by the Trustee compared with the offers for the Property submitted by the Staking Horse Bidder and other Competing Bidders.

**G.**    **Good Faith Purchaser.**  The Sale Agreement with the Buyer and the Sale contemplated thereby have been negotiated by the Trustee and the Buyer in good faith, at arm's length and without collusion or fraud.  The terms and conditions of the Sale and the Sale Agreement, including the total consideration to be realized by the Trustee pursuant to the Sale Agreement, are fair and reasonable.  The Buyer is a "good faith purchaser" of the Property, entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code with respect to the Sale, the Sale Agreement and the conveyance and transfer of the Property thereunder.  The

-3-

Trustee and the Buyer have not engaged in any conduct that would cause or permit the Sale

Agreement to be avoided, or costs, fees or damages to be imposed, under section 363(n) of the

Bankruptcy Code.  The Buyer is entitled to all the protections and immunities of section 363(n)

of the Bankruptcy Code.

      **H.**    **Trustee Power and Authority.**  Subject to entry of this Order, the Trustee has full

power and authority to execute and deliver the Sale Agreement and to perform all of its respective

obligations thereunder, including without limitation the conveyance and assignment of the

Property and any rights pursuant thereto or arising therefrom.  No consents or approvals, other

than as expressly provided for in the Sale Agreement and the entry of this Order, are required by

the Trustee to consummate the Sale.

      **I.**    **Free and Clear Sale.**  The Sale and conveyance of the Property to the Buyer will

be, as of the Closing, a legal, valid and effective transfer of such assets, and each such transfer

and conveyance vests or will vest the Buyer with all right, title and interest of the Debtor and/or

the Debtor's estate to the Property free and clear of all liens, Claims (as defined in section 101(5)

of the Bankruptcy Code), encumbrances and interests, excluding the Permitted Exceptions

(collectively, "Liens, Claims and Encumbrances") with any Liens, Claims and Encumbrances to

attach to the consideration to be received by the Trustee to the extent of their validity, priority,

amount and subject to the same defenses and avoidability, if any, as of the Closing Date, under

applicable federal and state laws.  To the extent that any creditor is determined to have a lien on

the Real Property, that creditor's interest in proceeds from the sale shall be surcharged 15 percent

(15%) pursuant to Section 506(c) of the Bankruptcy Code, unless otherwise agreed by the Trustee

and approved by the Court.

**J.**    **Satisfaction of 363(f) Standards.**  The Trustee may sell and convey the Property free and clear of all Liens, Claims and Encumbrances because, with respect to each creditor, person or entity asserting a Lien, Claim and Encumbrance, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied.  Those holders of Liens, Claims and Encumbrances who did not object or who withdrew their objections to the Sale Motion are deemed to have consented to the Sale Motion and the sale and conveyance of the Property to the Buyer pursuant to Bankruptcy Code section 363(f)(2).  Those holders of Liens, Claims and Encumbrances who did object the Sale Motion fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Liens, Claims and Encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the Property in which such holders allege a Lien, Claim and Encumbrance, in the same order of priority, with the same validity, force and effect that such holder had prior to the Sale, and subject to any claims and defenses the Trustee and the Debtor's estate may possess with respect thereto.

**K.**    **Fair Consideration.**  The consideration for the Sale constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), and under the laws of the United States, any state, territory, possession or the District of Columbia.  The Sale Agreement represents a fair and reasonable offer to purchase the Property.

**L.**    The Sale contemplated by the Sale Agreement is in the best interests of the Debtor's estate and its creditors; and it is therefor,

**ORDERED, ADJUDGED AND DECREED THAT**:

-5-

1.      **Relief Granted; Objections Overruled.**  The relief requested in the Sale

Motion is granted as set forth herein, subject to the provisions of paragraph 14 hereof.  All

objections and responses to the Sale Motion, this Order, or the relief granted herein that have

not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and

denied on the merits with prejudice.

2.      **Approval and Authorization to Perform.**  The Carve-out[2], the Sale

Agreement, Surcharge, and the Sale are hereby approved and authorized in all respects.  The

Trustee and his employees, agents, and representatives are authorized and empowered to fully

perform under, consummate, and implement the terms of the Carve-out and the Sale Agreement

together with any and all additional instruments and documents that may be reasonably

necessary or desirable to implement and effectuate the terms of the Carve-out, the Sale

Agreement, this Order, and the Sale, including, without limitation, deeds, bills of sale,

assignments and other instruments of transfer, and to take all further actions as may reasonably

be requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and

conferring to the Buyer, any or all of the Property, as may be necessary or appropriate to the

performance of the obligations as contemplated by the Sale Agreement, without any further

corporate action or orders of the Court.

3.      The Trustee is authorized and empowered to take such actions, or cause to be

filed with any office or agency of any state or other applicable officials of any applicable

governmental units any and all certificates, actions, filings, documents or agreements of this

Order, as may be required under appropriate provisions of the applicable laws of all applicable

---

[2] Subject to the provisions of paragraph 14 hereof.

governmental units or as the Trustee may determine are necessary or appropriate to effectuate the Sale contemplated by the Sale Agreement. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

4.     **Good Faith Purchaser.** The Buyer is a good faith purchaser of the Property and is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or conveyance of the Property under the Sale Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal).

5.     **Section 363(n) of the Bankruptcy Code.** The Sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

6.     **Valid Transfer.** Effective as of the Closing, the sale of the Property by the Trustee to the Buyer shall constitute a legal, valid and effective transfer and conveyance of the Property notwithstanding any requirement for approval or consent by any person.

7.     **Free and Clear Sale.** Upon the Closing, the Trustee shall be, and hereby is, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and convey the Property to the Buyer. The Sale of the Property to the Buyer vests the Buyer with all right, title and interest of the Debtor and the Debtor's estate to the Property free

-7-

and clear of any and all Liens, Claims and Encumbrances, with all such Liens, Claims and Encumbrances to attach to the proceeds of the Sale and the conveyance of the Property with the same priority, validity, force, and effect and subject to the same defenses and avoidability, if any, as they have in or against the Property on the Closing Date under applicable federal and state law; provided, however, the Trustee is authorized to pay at Closing the following: (a) the real estate taxes, transfer taxes and other customary closing costs as required under the Sale Agreement and (b) the judgment in the amount of $34,384.55 plus interest thereon in favor of the Southampton Industrial Mews Condominium Association entered against the Debtor in the Court of Common Pleas of Bucks County, Pennsylvania, Case No. 2014-01890.  To the extent that any creditor is determined to have a lien on the Real Property, unless otherwise agreed by the Trustee and approved by the Court, that creditor's interest in proceeds from the sale shall be surcharged 15 percent (15%) pursuant to Section 506(c) of the Bankruptcy Code[3].  The Trustee shall hold in a separate, interest bearing account all remaining proceeds of the Sale and the conveyance of the Property until further order of the Court.

8.    The provisions of this Order authorizing the Sale and conveyance of the Property free and clear of Liens, Claims and Encumbrances shall be self-executing, and neither the Trustee nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

9.    **Direction to Creditors and Parties in Interest.**  On the Closing Date, each of the Debtor's creditors and the holders of any Liens, Claims and Encumbrances are authorized and

---

[3] Subject to the provisions of paragraph 14 hereof.

-8-

directed to execute such documents and take all other actions as may be reasonably necessary to terminate, discharge or release their Liens, Claims and Encumbrances in the Property, if any, as such Liens, Claims and Encumbrances may otherwise exist. Following the Closing, no holder of any Lien, Claim and Encumbrance on the Property may interfere with the Buyer's use and enjoyment of the Property based on or related to such Lien, Claim and Encumbrance, and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale.

10.    **Direction to Government Agencies.** Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other persons and entity who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Property, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Sale Agreement and approved by this Order.

11.    **Licenses, Permits and Leases.** To the greatest extent available under applicable law, and to the extent provided for pursuant to the Sale Agreement, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, lease, and any other governmental authorization or approval of the Debtor with respect to the Property, to the extent assignable under applicable law, and all such licenses, permits, registrations, leases and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to

the Property sold, transferred or conveyed to the Buyer on account of the filing or pendency of this

chapter 7 case or the consummation of the transaction contemplated by the Sale Agreement.

12.    **Amendments.** Subject to the terms of the Sale Agreement, the Sale Agreement and

any related agreements may be waived, modified, amended, or supplemented by agreement of the

Trustee and the Buyer, without further action or order of the Court; provided, however, that any

such waiver, modification, amendment, or supplement is not material and substantially conforms

to, and effectuates, the Sale Agreement and any related agreements. Any material modification,

amendment, or supplement to the Sale Agreement must be approved by Order of the Court

following a motion on notice to all interested parties.

13.    **No Stay of Order.** Notwithstanding Bankruptcy Rule 6004, this Order shall

be effective and enforceable immediately upon entry and its provisions shall be self-

executing. Time is of the essence in closing the Sale referenced herein, and the Trustee and

the Buyer intend to close the Sale as soon as practicable. Any party objecting to this Order

must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being

foreclosed as moot.

14.    **Daniele Portnoy and Sam Zach Irrevocable Trust.** With respect to their rights

or interests in any alleged lien on the 1320 Property, in the event that Daniele Portnoy and the Sam

Zach Irrevocable Trust prevail in the pending adversary proceeding commenced by the Trustee

and/or the pending action filed in Bucks County by Republic Bank, then: (1) the provisions of this

order approving the Trustee's settlement with Republic Bank shall not apply to them and (2) the

amount of, but not the entitlement to, a surcharge pursuant to Section 506(c) of the Bankruptcy

Code shall be determined after notice and a hearing.

-10-

15.     **Retention of Jurisdiction.**    The Court shall retain jurisdiction to (a) interpret,

implement and enforce the terms and provisions of this Order and the Sale Agreement, including

all amendments thereto and any waivers and consents thereunder and each of the agreements

executed in connection therewith, in all respects, and (b) to decide any disputes concerning this

Order and the Sale Agreement, or the rights and duties of the parties hereunder or thereunder or

any issues relating to the Sale Agreement and this Order.


Dated: October 18, 2016

Magdeline D. Coleman
United States Bankruptcy Judge


-11-

## AGREEMENT OF SALE–NONRESIDENTIAL CONDOMINIUM UNIT

THIS AGREEMENT OF SALE ("Agreement") made this 30th day of September, 2016, by and between **Robert H. Holber, Chapter 7 Trustee for the Estate of Barry Portnoy**, with an address at c/o Gary F. Seitz, Esquire, Gellert Scali Busenkell & Brown LLC, The Curtis Center, Suite 470 West, 601 Walnut Street, Philadelphia, PA 19106 ("Seller"), and **EVC Turnpike Dr., LLC**, with an address at c/o Elliot's Vending Company, Inc., 2910 Franks Road– Suite 3, Huntingdon Valley PA 19006, Attn: Elliot Teitelbaum ("Buyer"). As used herein, "Execution Date" shall mean the date of execution and delivery by the last party to sign this Agreement. Capitalized terms used, but not defined, in this Agreement shall have the meanings assigned to them in the Bankruptcy Trustee Addendum to Agreement for Sale of Real Estate attached hereto as **Exhibit "A"** ("Addendum").

### WITNESSETH:

In consideration of the covenants and conditions set forth in this Agreement, and under and subject to the terms and conditions as more particularly set forth herein, the parties hereto, intending to be legally bound hereby, agree as follows:

1. **PROPERTY**

Seller hereby agrees to sell, convey, transfer and assign to Buyer, who agrees to purchase and accept from Seller all right, title and interest of Barry Portnoy ("Debtor") and the Debtor's estate in the Bankruptcy Case in and to: (a) an industrial, condominium unit located at 1320 Industrial Blvd., Bay No. 2, Southampton, PA, as more fully described in **Exhibit "B"** attached hereto, together with all improvements, tenements, hereditaments, easements, fixtures, appurtenances, permits, approvals, licenses, plans, warranties and other rights arising from or appertaining thereto, including but not limited to all such rights and appurtenances arising out of the "Condominium Documents" (as defined below) (collectively, the "Real Property"); and (b) the Lease Agreement dated May 21, 2016 ("ECS Lease") between Barry Portnoy ("Debtor") and East Coast Spas, LLC ("ECS"). The Real Property and ECS Lease are hereinafter collectively referred to as the "Property". As used herein, "Condominium Documents" means the Declaration of Condominium Ownership for Southampton Industrial Mews, a Co-Partnership, as recorded in the Office for the Recording of Deeds in and for the County of Bucks at Doylestown, Pennsylvania, on December 30, 1983 in Deed Book 2537 page 278, and Plats and Plans for Southampton Industrial Mews, a Condominium, as recorded in Plan Book 220 page 84-85, amendments in Deed Book 2538 page 94 and Land Record Book 464 page 1237, and the By-Laws of the Southampton Industrial Mews Upper Southampton Township, Bucks County, Pennsylvania.

2. **TERMS**

*~~780~~* The purchase price for the Property shall be *Seven Hundred Eighty E.T.* ~~Six Hundred Forty~~ Thousand Dollars ($~~640~~,000.00) (the "Purchase Price") payable on the following terms: *RAW*

Cash deposit payable upon Execution Date          $ 35,000.00 ("Deposit Monies")

1

17863423v.1

At Closing, by cashiers' check or wire transfer
of immediately available funds    ~~$605,000.00~~    745,000.00  G.T. ᴿ⁴ᴴ

Total    ~~$640,000.00~~    780,000.00  G.T. ·ᴿ⁴ᴴ

## 3.    DEPOSIT MONIES

3.1    The Deposit Monies shall be held in escrow by Seller and deposited in a non-interest bearing account established by the Seller and held by Seller in accordance with this Agreement. At Closing, the Deposit Monies shall be paid to Seller and credited against the Purchase Price. If this Agreement is terminated or one of the parties hereto defaults, the Deposit Monies shall be released in accordance with the applicable terms of this Agreement and the Addendum.

3.2    Seller and Buyer agree as follows with respect to the duties of Seller with respect to the Deposit Monies:

3.2.1. Seller undertakes to perform only such duties as are expressly set forth in this Agreement and no implied duties or obligations shall be read into this Agreement against Seller.

3.2.2 Seller may act in reliance upon any writing or instrument or signature which it believes, in good faith, to be genuine, and may assume that any person purporting to give any writing, notice, advice or instrument in connection with the provisions of this Agreement has been duly authorized to do so. Seller shall not be liable in any manner for the sufficiency or correctness as to form, manner and execution, or validity of any instrument deposited in escrow, nor as to the identity, authority, or right of any person executing the same, and Seller's duties under this Agreement shall be limited to those provided in this Agreement.

3.2.3 Unless Seller discharges any of its duties under this Agreement in a negligent manner or is guilty of willful misconduct with regard to its duties under this Agreement, Seller and Buyer shall indemnify Seller and hold it harmless from any and all claims, liabilities, losses, actions, suits or proceedings at law or in equity, or other expenses, fees, or charges of any character or nature, which it may incur or with which it may be threatened by reason of its acting as escrow holder under this Agreement; and, in such connection, Seller and Buyer shall jointly indemnify Seller against any and all expenses including reasonable attorneys' fees and the cost of defending any action, suit or proceeding or resisting any claim in such capacity.

3.2.4 If the parties (including escrow holder) shall be in disagreement about the interpretation of this Agreement, or about their respective rights and obligations, or the propriety of any action contemplated by Seller, Seller may, but shall not be required to, file

2

an action in interpleader to resolve the disagreement. Seller shall be indemnified for all costs and reasonable attorneys' fees in its capacity as escrow holder in connection with any such interpleader action and shall be fully protected in suspending all or part of its activities under this Agreement until a final judgment in the interpleader action is received.

3.2.5 Seller may consult with counsel of its own choice and have full and complete authorization and protection in accordance with the opinion of such counsel. Seller shall otherwise not be liable for any mistakes of fact or errors of judgment, or for any acts or omissions of any kind, unless caused by its negligence or willful misconduct.

4.    CLOSING

4.1    Subject to satisfaction of all conditions to Closing, the Closing shall be held during regular business hours on or before twenty (20) days following the entry of the Approval Order by the Bankruptcy Court and the satisfaction of or waiver of all conditions precedent to Closing set forth in this Agreement.   In the event the last day for Closing as provided herein shall occur on a non-business day, then Closing shall be postponed to the next business day.

4.2    At Closing, Seller shall deliver to Buyer the items required of Seller under this Agreement, and Buyer shall deliver to Seller the balance of the Purchase Price, after crediting Buyer with the Deposit Monies (and making other adjustments and prorations), and the other items required of Buyer under this Agreement.

4.3    Closing Costs.

4.3.1    Seller's Costs.  Seller shall pay (i) the fees and expenses of Seller's attorneys and other professionals and contractors in connection with this transaction, and (ii) recording charges due in connection with the satisfaction, release or termination of any mortgages, security interests or liens affecting the Property.

4.3.2    Buyer's Costs.  Buyer shall pay (i) any costs incurred by Buyer in preparing and performing its due diligence investigations, (ii) the fees and expenses of Buyer's attorneys and other professionals and contractors in connection with this transaction, (iii) the premiums and cost of title insurance, and (iv) recording charges due in connection with the recording of the deed and any other instruments to be recorded by Buyer in connection with its purchase of the Property.

4.4    Prorations and Credits at Closing.  The following items relating to the Property shall, as applicable, be prorated between Buyer and Seller or credited to Buyer or Seller:

4.4.1    Realty Transfer Taxes.  Any realty transfer taxes imposed on the sale of the Real Property pursuant to this Agreement shall be paid in equal shares by Seller and Buyer.

3

**4.4.2    Realty Taxes and Other Lienable Charges**.  Real estate taxes, water and sewer charges and rentals, and all other apportionable charges shall be apportioned between Seller and Buyer as of the Closing Date on a per diem basis, based on the fiscal year or billing period, as applicable, of the levying authority.

**4.4.2    Utility Expenses**.  To the extent that any utilities servicing the Real Property are in the name of the Debtor or the Seller, Seller shall have sole responsibility for paying all such utility charges accrued as of the Closing Date.  To the extent possible Seller shall cancel such utilities for the Real Property as of the date of Closing and Buyer shall be responsible for arranging for the continuation of such utilities in Buyer's own name, and any such utilities accounts that are terminated by Seller shall not be apportioned.  Seller shall cooperate with Buyer and execute all necessary documents as reasonably requested by Buyer to accomplish the foregoing.

**4.4.3    Rents and Security Deposit Under ECS Lease**.  All rents and other charges and payments on account of financial obligations of ECS under the ECS Lease (collectively, "Rents") for the month in which the Closing Date occurs, which have actually been received by the Seller as of the Closing Date, shall be apportioned between Seller and Buyer as of the Closing Date on a per diem basis.  Buyer shall receive a credit against the Purchase Price in an amount equal to two months gross rent consisting of a one month security deposit and the last month's rent pursuant to Section 31 of the ECS Lease.  Seller and Buyer agree that all Rents attributable to periods prior to the Closing Date shall accrue to the benefit of Seller, and all Rents attributable to periods including and after the Closing Date shall accrue to the benefit of Buyer.  After Closing, Seller and Buyer agree to turn over any Rents received in accordance with the immediately preceding sentence.

**4.4.4    Survival**.  The provisions of this Section 4.4 shall survive the Closing.  In the event final figures have not been reached on any of the adjustments, prorations or costs which are to be adjusted at or prior to Closing pursuant to this Section 4.4, the parties shall close using adjustments and prorations reasonably estimated by Seller and Buyer, subject to later readjustment when such final figures have been obtained.

**4.5    Conditions to Seller's Closing Obligations; Buyer Closing Deliveries**.  Seller's obligation to make the deliveries required of Seller on the Closing Date and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or written waiver by Seller of each of the following conditions:

**4.5.1**    Buyer shall have delivered at the Closing the balance of the Purchase Price after crediting the Deposit Monies and taking into account prorations and credits in accordance with this Agreement.

**4.5.2**    Buyer shall have delivered at the Closing original affidavits and similar instruments executed by Buyer as are reasonably required by Buyer's title company ("Title Company") for (a) the elimination of any standard or printed exceptions in Buyer's final policy of title insurance and as necessary to comply with the title requirements of Section 10 herein, and (b) the satisfaction of any Internal Revenue Service disclosure and reporting requirements, including, but not limited to, Form 1099B. All such affidavits and similar

4

instruments shall be in form and substance reasonably satisfactory to Buyer and the Title Company.

4.5.3   Buyer shall have delivered at the Closing an original "Lease Assignment" (as defined below) executed by Buyer.

4.5.4   Buyer shall have performed or tendered performance of each and every material covenant on Buyer's part to be performed under this Agreement which, by its terms, is required to be performed at or before the Closing.

4.5.5   The Bankruptcy Court shall have entered the Approval Order and the Approval Order shall not have been stayed as of the Closing Date.

4.6   Conditions to Buyer's Closing Obligations; Seller Closing Deliveries. Buyer's obligation to make the deliveries required of Buyer on the Closing Date and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or written waiver by Buyer of each of the following conditions:

4.6.1   Seller shall have delivered at the Closing, an original affidavit executed by Seller pursuant to Section 1445 of the Internal Revenue Code of 1986, as amended, confirming that Seller is not a non-resident alien for purposes of United States income tax.

4.6.2   Seller shall have delivered at the Closing, original affidavits and similar instruments executed by Seller as are reasonably required by the Title Company for (i) the elimination of any standard or printed exceptions in Buyer's final policy of title insurance and as necessary to satisfy the title condition set forth in Section 10 herein, and (ii) the satisfaction of any Internal Revenue Service disclosure and reporting requirements, including, but not limited to, Form 1099B. All such affidavits and similar instruments shall be in form and substance reasonably satisfactory to Seller and the Title Company.

4.6.3   Seller shall have delivered at the Closing: (a) an original deed for the Real Property executed by Seller and duly acknowledged in customary form ("Deed"); and (b) an original lease assignment and assumption agreement with respect to the ECS Lease executed by Seller in the form attached hereto as Exhibit "C" ("Lease Assignment").

4.6.4   Seller shall have performed or tendered performance of each and every material covenant on Seller's part to be performed under this Agreement which, by its terms, is required to be performed at or before the Closing.

4.6.5   The Bankruptcy Court shall have entered the Approval Order and the Approval Order shall not have been stayed as of the Closing Date.

5.   **DEFAULT BY BUYER OR SELLER**

5.1   Seller Default.  If Seller fails to complete Closing in accordance with the terms of this Agreement, or (ii) Seller otherwise materially defaults in its obligations under this Agreement, and such default is not cured within ten (10) days after written notice specifying such default is given to Seller, Buyer, in its sole discretion may: (i) terminate this Agreement by written notice to that effect given to Seller, in which event the Deposit Monies and any interest

5

thereon shall be returned to Buyer, in addition to which Seller shall reimburse Buyer its reasonable out of pocket expenses and costs incurred in connection with this sale, including without limitation legal fees, title and survey charges, environmental and engineering inspection costs, and such other charges incurred by Buyer in the exercise of its due diligence, the total reimbursement of which shall not exceed $25,000.00, and this Agreement shall thereupon terminate; or (ii) enforce this Agreement by specific performance.

        5.2     **Buyer Default**. If (i) Buyer fails to complete Closing in accordance with the terms of this Agreement, or (ii) Buyer otherwise materially defaults in the performance of its obligations under this Agreement and such default is not cured within ten (10) days after written notice specifying such default is given to Buyer, then in either such event the Deposit Monies and any interest thereon shall be paid to and retained by Seller as liquidated and agreed damages for such breach, which shall be Seller's sole remedy for such breach, whereupon this Agreement shall thereupon terminate. This limitation of liability shall not apply to Buyer's indemnification obligations under this Agreement or to any damages (including reasonable attorney's fees, court costs and other costs of collection) Seller may incur in the event Buyer defaults but fails to authorize the release of the Deposit Monies to Seller. Buyer and Seller acknowledge and agree that damages which would be sustained by Seller in the event of a breach by Buyer of its obligations under this Agreement are difficult to determine and in such event that the Deposit Monies represents a reasonable estimate of such damages and is not intended as a penalty.

6.     **POSSESSION**

        6.1     **Deed**. Subject to the ECS Lease, possession of the Real Property will be delivered at the time of Closing by Seller's delivery of the Deed and all keys and access codes to the Real Property, to the extent within Seller's possession or custody.

7.     **OPERATIONS PENDING CLOSING**

     From and after the Effective Date through and including the Closing Date, Seller shall not modify, amend or extend the ECS Lease without Buyer's prior written consent. Seller's foregoing agreement is a condition to Buyer's obligation to close under this Agreement and must be satisfied by Seller or waived by Buyer in writing prior to Closing.

8.     **CASUALTY**

     Seller shall bear the risk of all loss or damage to the Real Property from all causes until the completion of Settlement. Seller agrees that it will maintain, pending Settlement, its existing policies of property and liability insurance relating to the Real Property. If prior to Settlement there shall be any material damage or destruction to the Property by fire or other casualty, Seller shall promptly give written notice thereof to Buyer and Buyer may elect to terminate this Agreement, in which event the Deposit Monies shall be returned to Buyer, or to complete Settlement with an assignment to Buyer of all insurance proceeds relating to the casualty and a credit from Seller to Buyer in the amount of any deductibles.

6

**9.    CONDEMNATION**

In the event of the taking of all or any material portion or portions of the Real Property by eminent domain proceedings or the commencement of any such proceeding, at any time prior to the completion of Settlement, Buyer shall have the right, at Buyer's sole option, to terminate this Agreement by giving written notice to Seller within fifteen (15) days after Seller notifies Buyer of such proceeding. If this Agreement is so terminated, Seller shall return to Buyer the Deposit Monies, together with any interest earned thereon, and this Agreement shall terminate. If Buyer does not so terminate this Agreement, the Purchase Price for the Property shall be reduced by the total of any awards or other proceeds actually received by Seller with respect to any such taking, and at Settlement Seller shall assign to Buyer all rights of Seller in and to any awards or other proceeds payable but not yet received by Seller by reason of any such taking.

**10.    TITLE**

Buyer's obligation to close this transaction is conditioned on title to the Property being good and marketable and insurable by the Title Company at its standard rates under its standard ALTA Owner's Policy Form 2006 title insurance policy, free and clear of all liens, mortgages, claims, encumbrances, interests, tenancies, easements and restrictions except for the matters set forth in the Schedule of Permitted Exceptions attached hereto as Exhibit "D" (collectively, "Permitted Exceptions"). If at the time of Closing the Real Property is subject to any mechanics lien or claim, Seller shall give such indemnifications, affidavits and other protection to, and as are required by, the Title Company, and Buyer agrees to accept title to the Real Property subject to such mechanics lien or claim provided that the Title Company provides affirmative insurance against loss with respect thereto.

**11.    RECORDING**

This Agreement shall not be recorded in any public office.

**12.    ASSIGNMENT - NOMINEE**

Buyer shall have the right, by notice to Seller prior to Settlement, but without the need for Seller's consent or approval, to designate an entity of its choice to take title to the Property. Notwithstanding the foregoing, Buyer shall be and remain fully liable to Seller hereunder regardless of any assignment to or nomination of an entity other than Buyer to take title to the Property.

**13.    ENTIRE AGREEMENT OF PARTIES**

This Agreement, together with the Addendum and all other exhibits attached hereto, contains the whole agreement between the parties hereto and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever.

14.    **TIME OF THE ESSENCE**

It is understood and agreed that with respect to all dates set out in this Agreement of Sale time is of the essence.

15.    **BINDING EFFECT**

This Agreement shall be binding upon and inure the benefit of Seller and Buyer and their respective successors and assigns.

16.    **NOTICES**

Any notice required to be given under this Agreement shall be given in writing and either (i) sent by United States registered or certified mail, with postage prepaid, return receipt requested; (ii) sent by Federal Express or another nationally recognized overnight courier; (iii) hand delivered; (iv) sent by facsimile transmission with a hard copy sent on the same day by a nationally recognized overnight courier; or (v) sent by email attachment with a hard copy sent on the same day by a nationally recognized overnight courier. All notices shall be deemed to have been given 48 hours following deposit in the United States Postal Service, or upon delivery if sent by overnight courier service, facsimile, email or hand delivery.  All notices shall be addressed to the following address or at such other address as may hereafter be substituted by notice in writing thereof:

If to Buyer:

EVC Turnpike Dr., LLC
c/o Elliot's Vending Company, Inc.
ATTN:  Elliot J. Teitelbaum, President
2910 Franks Road–Suite 3
Huntingdon Valley PA 19006
FAX:  215-947-5425
Email:  e.teitelbaum@vendingservices.org

With a copy to Buyer's attorneys:

Steven G. Sklar, Esq.
Law Office of Steven G. Sklar
400 Greenwood Avenue
Wyncote PA 19095
FAX: 215-884-9025
Email: attysklar@rcn.com

Steven E. Ostrow, Esq.
White and Williams LLP
7 Times Square, Suite 2900
New York, NY  10036

8

FAX: 212-631-4430
Email: ostrows@whiteandwilliams.com

If to Seller:

Robert Holber, Chapter 7 Trustee for the Estate of Barry Portnoy
41 East Front St.
Media, PA 19063
FAX:
Email: trustee@holber.com

With a copy to Seller's attorney:

Gary Seitz, Esq. and Holly Smith, Esq.
Gellert Scali Busenkell & Brown, LLC
The Curtis Center
601 Walnut Street, Suite 470 West
Philadelphia, PA 19106
FAX: 215-238-0016
Email: gseitz@gsbblaw.com; hsmith@egsbblaw.com

17.    **MISCELLANEOUS**

17.1    Brokers. Buyer and Seller each represent to the other that the transaction contemplated by this Agreement was brought about and entered into by Buyer and Seller acting as principals and without the involvement of any brokers, agents or finders. Neither Buyer nor Seller have committed to the payment of any brokerage fee or commission in connection with this transaction. If any such claim for brokerage fees or commissions is made by any broker, finder or agent or any other person, the party through which such claim is made agrees to indemnify, defend and hold the other party harmless against any such claim, at such party's own cost and expense, including reasonable attorneys' fees.

17.2    No Waiver. The failure or delay of any party to exercise any right, remedy, power, or privilege under this Agreement shall not operate as a waiver thereof, nor shall any single or partial exercise of any right preclude any other or further exercise of the same, nor shall any waiver of any right with respect to any occurrence be construed as a waiver of such right with respect to any other occurrence. No waiver shall be effective unless it is in writing and signed by the party asserted to have granted such waiver.

17.3    Controlling Law. This Agreement shall be interpreted, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

17.4    Further Assurances. Each party hereto shall cooperate and take action as may be reasonably requested by the other party in order to carry out the terms and purposes of this Agreement and the other transactions contemplated herein.

9

**17.5** **Attorneys' Fees.** In the event of any litigation between Buyer and Seller arising under or in connection with this Agreement, the prevailing party shall be entitled to recover from the other party the expenses of litigation (including reasonable attorneys' fees, expenses and disbursements) incurred by the prevailing party.

**17.6** **Execution in Counterparts; Delivery.** This Agreement may be executed in counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all the parties reflected herein as signatories. Executed counterparts of this Agreement may be transmitted by telecopy, email or other electronic means and copies so transmitted shall be deemed originals.

**17.7** **Provisions Severable; Construction.** The provisions of this Agreement are independent of and severable from each other, and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part. No provision of this Agreement shall be construed against or interpreted to the disadvantage of any party by any court or other governmental or judicial authority by reason of such party's having or being deemed to have prepared or imposed such provision.

**17.8** **Amendment.** This Agreement, together with the Addendum and all other exhibits attached hereto may not be modified or amended except by a writing signed by the Seller and Buyer.

**17.9** **Waiver of Trial by Jury.** SELLER AND BUYER HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER ARISING IN TORT OR CONTRACT) BROUGHT BY EITHER AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT.

**(SIGNATURES APPEAR ON NEXT PAGE)**

10

IN WITNESS WHEREOF, the said parties have hereunto set their hands the day and year written below, intending to be legally bound hereby.


**BUYER:**

EVC TURNPIKE DR., LLC

By: _Ell't Jut, Member_
    Name: Elliot Teitelbaum
    Title: Member


Dated: September 30, 2016.


**SELLER:**

_____
Robert H. Holber, Chapter 7 Trustee
for the Estate of Barry Portnoy


Dated: October 17, 2016.

11

EXHIBIT "A"

## BANKRUPTCY TRUSTEE ADDENDUM
## TO AGREEMENT FOR SALE OF REAL ESTATE

THIS BANKRUPTCY TRUSTEE ADDENDUM TO AGREEMENT FOR SALE OF REAL ESTATE ("ADDENDUM") IS PART OF THE AGREEMENT OF SALE ("AGREEMENT" OR "AGREEMENT OF SALE") DATED SEPTEMBER 30, 2016 BETWEEN EVC TURNPIKE DR., LLC ("BUYER") AND ROBERT H. HOLBER, AS CHAPTER 7 TRUSTEE FOR BARRY PORTNOY ("SELLER" OR "TRUSTEE"), IN IN RE BARRY PORTNOY, UNITED STATES BANKRUPTCY COURT, FOR THE EASTERN DISTRICT OF PENNSYLVANIA ("BANKRUPTCY COURT"), CASE NO. 14-16981-MDC ("BANKRUPTCY CASE").

THE SELLER AND THE BUYER AGREE, AS FOLLOWS:

1.      WHERE THE TERMS OF THIS ADDENDUM CONFLICT WITH ANY PROVISION FOUND ELSEWHERE IN THE AGREEMENT OF SALE, ITS E X H I B I T S , OR NOTICES, THE TERMS IN THIS ADDENDUM SHALL GOVERN. CAPITALIZED TERMS USED AND NOT DEFINED IN THIS ADDENDUM SHALL HAVE THE MEANINGS ASSIGNED TO THEM IN THE AGREEMENT.

2.      BUYER CONSENTS TO THE PERSONAL JURISDICTION OF THE UNITED STATES BANKRUPTCY COURT WITH RESPECT TO MATTERS CONCERNING THE AGREEMENT, THIS ADDENDUM AND THE SALE MOTION (AS DEFINED BELOW).

3.      THE PROVISIONS OF THIS ADDENDUM SHALL SURVIVE SETTLEMENT ON THE PROPERTY.

4.      THE BUYER AND TRUSTEE AGREE THAT THE TRUSTEE AND HIS AGENTS HAVE COMMUNICATED NO SPECIFIC KNOWLEDGE OF THE PROPERTY'S CONDITION, USE OR USABILITY AND THAT THE BUYER HAS NOT RELIED ON ANY SUCH COMMUNICATIONS IN MAKING DECISIONS RELATED TO THE PROPERTY. THE BUYER H A S UNDERTAKEN INDEPENDENT INVESTIGATIONS AND IS SATISFIED AS TO ALL ASPECTS OF THE PROPERTY'S CONDITION, USE, AND USABILITY, OR ANY OTHER CONDITION OR RIGHT AND FURTHER AGREES THAT:

        A      THERE IS NO WARRANTY ON THE PROPERTY. THE PROPERTY AND ANY IMPROVEMENTS THEREON AND/OR THE SPECIFIED CONTENTS THEREIN ARE SOLD AS IS, WITHOUT ANY WARRANTY, IMPLIED OR EXPRESSED AS TO CONDITION, USE, USABILITY, OR ANY OTHER CONDITION OR RIGHT.

        B.      THE PROPERTY AND ANY IMPROVEMENTS OR SPECIFIED CONTENTS ARE SOLD BY THE TRUSTEE, AS IS, WHERE IS, WITHOUT ANY REPRESENTATIONS OR WARRANTEES, AND, THE BUYER AGREES TO ACCEPT THE PROPERTY AS IS,

12

SUBJECT TO NORMAL WEAR AND TEAR, INCLUDING MOVING WEAR AND TEAR, AND/OR CLEAN OUT EXPENSE.

     C.    THE BUYER RECOGNIZES AND ACCEPTS THAT THE PROPERTY IS BEING SOLD IN A BANKRUPTCY ESTATE SALE AND AS SUCH THE TRUSTEE IS NOT OBLIGATED TO PROVIDE A BROOM CLEAN OR VACANT PROPERTY.

     D.    THE BUYER RECOGNIZES AND ACCEPTS THAT AS ESTATE PROPERTY, PRIOR TO OR AT SETTLEMENT THE PROPERTY MAY CONTAIN ITEMS OF PERSONAL PROPERTY OF TENANTS OR OF OTHERS AND ABSENT A SPECIFIC LISTING OF ITEMS IN THE AGREEMENT, NO PERSONAL PROPERTY IS CONVEYED.

5.    THIS SALE IS CONDITIONED UPON AND SUBJECT TO BANKRUPTCY COURT APPROVAL, INCLUDING HIGHER AND BETTER OFFERS.

6.    BANKRUPTCY COURT APPROVAL OF THIS SALE SHALL BE SOUGHT BY THE TRUSTEE/SELLER.

7.    THE TRUSTEE HAS FILED IN THE BANKRUPTCY CASE A MOTION FOR APPROVAL OF AN AGREEMENT OF SALE FOR THE PROPERTY WITH 1320B ACQUISITION HOLDINGS LLC PURSUANT TO SECTION 363(F) OF THE BANKRUPTCY CODE SUBJECT TO HIGHER AND BETTER OFFERS, AND OTHER RELATED RELIEF ("SALE MOTION"). IN CONNECTION WITH AN AUCTION OF THE PROPERTY, THE TRUSTEE SELECTED THE BUYER'S BID PURSUANT TO THE AGREEMENT AND THIS ADDENDUM AS THE HIGHEST AND BEST OFFER SUBJECT TO BANKRUPTCY COURT APPROVAL.

8.    THE TRUSTEE MAY AMEND OR WITHDRAW THE SALE MOTION WITH NOTICE TO BUYER AS HE DEEMS IN THE BEST INTEREST OF THE ESTATE.

9.    THE TRUSTEE SHALL MAIL ALL CREDITORS OF THE DEBTOR A NOTICE OF PROPOSED SALE TO ALL INTERESTED PARTIES IN THE BANKRUPTCY CASE. ALL INTERESTED PARTIES WILL HAVE 21 DAYS TO OBJECT OR TENDER ADDITIONAL OFFERS (UNLESS THE BANKRUPTCY COURT SETS A DIFFERENT PERIOD). IF NO OBJECTIONS ARE FILED, AN ORDER IS USUALLY ISSUED BY A BANKRUPTCY JUDGE APPROVING THE SALE AND THEN SETTLEMENT MAY OCCUR. IF OBJECTIONS ARE FILED, THE BANKRUPTCY COURT WILL SCHEDULE A HEARING TO DECIDE WHETHER THE OFFER SHOULD RECEIVE APPROVAL. IF BANKRUPTCY COURT APPROVAL IS DENIED OR IF THE TRUSTEE WITHDRAWS THE MOTION FOR APPROVAL OF THE SALE, THE BUYER'S DEPOSIT WILL BE RETURNED TO THE BUYER.

10.    BUYER SHALL BE SOLELY RESPONSIBLE FOR ALL STATE OR LOCAL DOCUMENTARY STAMPS, RECORDATION TAXES AND FEES WITH RESPECT TO THE TRUSTEE'S DEED, TITLE FEES, TITLE INSURANCE PREMIUMS, AND

WARRANTIES. THE BUYER AND SELLER WILL SPLIT THE TRANSFER TAXES (50%/50%) AT CLOSING.

11.    THE CLOSING DATE SHALL BE EXTENDED TO AND OCCUR ON THE DATE THAT IS NO LATER THAN 20 DAYS FOLLOWING ENTRY OF THE "APPROVAL ORDER" (AS DEFINED BELOW), PROVIDED SUCH APPROVAL ORDER IS NOT STAYED. IF BUYER BREACHES ITS OBLIGATIONS AND FAILS TO COMPLETE CLOSING WITHIN THIS PERIOD, BUYER IS DEEMED IN DEFAULT OF THE AGREEMENT OF SALE. WHERE BUYER HAS BREACHED ITS OBLIGATIONS AND FAILED TO COMPLETE SETTLEMENT WITHIN 31 DAYS OF THE ENTRY OF THE APPROVAL ORDER, PROVIDED SUCH APPROVAL ORDER IS NOT STAYED, BUYER HEREBY AGREES TO BE SUBJECT TO CLAIMS BY THE ESTATE FOR ALL ADDITIONAL COSTS, INTEREST EXPENSES, TAXES AND OTHER EXPENSES RELATED TO THE TRANSACTION AND THE PROPERTY INCURRED BY TRUSTEE AS A RESULT THEREOF, WHICH SUMS SHALL BE ADDED TO THE SALE PRICE AND SHALL BE DUE AT SETTLEMENT. WHERE BUYER HAS BREACHED ITS OBLIGATIONS AND FAILED TO COMPLETE SETTLEMENT WITHIN 61 DAYS OF THE ENTRY OF THE APPROVAL ORDER, PROVIDED SUCH APPROVAL ORDER IS NOT STAYED, BUYER HEREBY AGREES THAT THE TRUSTEE MAY TERMINATE THE AGREEMENT OF SALE AND RETAIN THE DEPOSIT MONIES WHICH SHALL BE CONSIDERED AS LIQUIDATED DAMAGES AND SHALL REMAIN PROPERTY OF THE ESTATE, AND BUYER SHALL HAVE NO RIGHT OR CLAIM OF CREDIT, REDEMPTION OR RETURN. THE ESTATE RETAINS ALL RIGHTS AND RECOURSE AGAINST BUYER IN THE EVENT OF A BUYER DEFAULT.

12.    ANY DISPUTES BETWEEN THE PARTIES RELATING TO THE AGREEMENT, THIS ADDENDUM AND/OR THE SALE MOTION SHALL BE RESOLVED BY THE BANKRUPTCY COURT.

13.    (A) TITLE TO THE PROPERTY SHALL BE DELIVERED BY THE DEED AND THE LEASE ASSIGNMENT, FREE AND CLEAR OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES (EXCEPT FOR THE PERMITTED EXCEPTIONS) PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, WITH ANY SUCH LIENS, CLAIMS, INTEREST AND ENCUMBRANCES ATTACHING TO THE PROCEEDS OF THIS SALE.

        (B) THIS SALE IS CONTINGENT UPON THE BANKRUPTCY COURT'S ENTRY OF THE "APPROVAL ORDER" (AS DEFINED BELOW) THAT IS NOT STAYED AT THE TIME OF CLOSING. AS USED HEREIN AND UNLESS BUYER OTHERWISE CONSENTS IN WRITING, THE TERM "APPROVAL ORDER" MEANS THE ENTRY OF A FINAL ORDER BY THE BANKRUPTCY COURT IN THE BANKRUPTCY CASE WHICH:

                (I) APPROVES THIS SALE AND AUTHORIZES THE TRUSTEE TO PROCEED WITH CLOSING UNDER THE AGREEMENT AND THIS ADDENDUM AND TO CONVEY AND TRANSFER THE PROPERTY TO BUYER IN ACCORDANCE WITH THE TERMS AND CONDITIONS SET FORTH IN THE AGREEMENT AND THIS ADDENDUM;

14

(II) INCLUDES A SPECIFIC FINDING THAT BUYER IS A GOOD FAITH PURCHASER OF THE PROPERTY AND ENTITLED TO THE BENEFITS AND PROTECTIONS OF SECTION 363(M) OF THE BANKRUPTCY CODE;

(III) PROVIDES THAT, PURSUANT TO SECTION 363(F) OF THE BANKRUPTCY CODE, THE SALE AND CONVEYANCE OF THE PROPERTY TO BUYER SHALL BE FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS AND INTERESTS OF ANY KIND OR NATURE WHATSOEVER (EXCEPT FOR THE PERMITTED EXCEPTIONS); AND

(IV) IS IN FORM AND SUBSTANCE ACCEPTABLE TO THE TITLE COMPANY TO INSURE TITLE TO THE PROPERTY IN ACCORDANCE WITH SECTION 10 OF THE AGREEMENT OF SALE.

THE APPROVAL ORDER MAY GRANT ANY ADDITIONAL RELIEF REQUESTED BY THE TRUSTEE IN THE SALE MOTION OR OTHERWISE ORDERED BY THE BANKRUPTCY COURT, PROVIDED SUCH RELIEF DOES NOT MODIFY, CONFLICT WITH OR SUPERSEDE THE REQUIREMENTS OF SECTION 13.(B)(I), (II), (III) AND (IV) ABOVE UNLESS BUYER GIVES PRIOR WRITTEN CONSENT TO ANY SUCH MODIFICATION, CONFLICT OR SUPERSESSION.

14.    [INTENTIONALLY OMITTED AS APPLICABLE TO STALKING HORSE BIDDER ONLY]

15.    BUYER'S DEPOSIT MONIES SHALL BE HELD BY THE TRUSTEE/SELLER IN A NON-INTEREST BEARING TRUSTEE ACCOUNT. ANY DISPUTE REGARDING THE DEPOSIT MONIES SHALL BE RESOLVED BY THE BANKRUPTCY COURT. THE DEPOSIT MONIES SHALL BE CREDITED TO THE BUYER AT THE CLOSING WITHOUT THE NEED OF PRODUCING A TRUSTEE CHECK.

16.    [INTENTIONALLY OMITTED AS APPLICABLE TO STALKING HORSE BIDDER ONLY]

(ADDENDUM CONTINUED ON NEXT PAGE)

17.    ALL OTHER TERMS AND CONDITIONS OF THE AGREEMENT OF SALE NOT IN CONFLICT WITH THESE TERMS SHALL REMAIN IN FULL FORCE AND EFFECT.

BUYER:

EVC TURNPIKE DR., LLC

BY: _____, Member

    Name: Elliot Teitelbaum
    Title: Member

Dated: September 30, 2016

SELLER:

_____

Robert H. Holber, as Chapter 7 Trustee
for the Estate of Barry Portnoy

Dated: October 17, 2016

16

EXHIBIT "B"

**ALL THOSE CERTAIN UNITS, designated as 1320 Industrial Blvd. Building Bay Number 2 of Southampton Industrial Mews, a Condominium, situate in the Township of Upper Southampton, County of Bucks and Commonwealth of Pennsylvania, and as designated in Declaration of Condominium Ownership for Southampton Industrial Mews, a Co-Partnership, as recorded in the Office for the Recording of Deeds in and for the County of Bucks at Doylestown, Pennsylvania, on December 30, 1983 in Deed Book 2537 page 278, and Plats and Plans for Southampton Industrial Mews, a Condominium, as recorded in Plan Book 220 page 84, 85.**

**BEING Tax Parcel No. 48-20-42-2-B2.**

17

**EXHIBIT "C"**

## LEASE ASSIGNMENT AND ASSUMPTION AGREEMENT

This Lease Assignment and Assumption Agreement ("Assignment") is made and delivered as of the ___ day of _____, 2016, by and between Robert H. Holber, Chapter 7 Trustee for the Estate of Barry Portnoy ("Assignor"), and EVG Turnpike Dr., LLC ("Assignee"), a limited liability company organized under the laws of Pennsylvania and having an address located at c/o Elliot's Vending Company, Inc., 2910 Franks Road– Suite 3, Huntingdon Valley PA 19006.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby sell, convey, transfer and assign to Assignee, without representation or warranty, all right, title and interest of Assignor and Barry Portnoy in and to the Lease Agreement dated May 21, 2016, between Barry Portnoy and East Coast Spas, LLC ("Lease"). Assignee hereby assumes and agrees to perform all of the duties and obligations of the "lessor" or "landlord" under the Lease arising from and after the date hereof.

This Assignment shall be (a) binding upon and enforceable against, and shall inure to the benefit of, the parties hereto and their respective successors, legal representatives and assigns, and (b) governed by, construed under and interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

This Assignment may be executed in one or more counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.

**(SIGNATURES APPEAR ON NEXT PAGE)**

18



IN WITNESS WHEREOF, intending to be legally bound hereby, Assignor and Assignee have executed and delivered this Assignment, as of the day and year first written above.

**ASSIGNOR:**

_____
Robert H. Holber, Chapter 7 Trustee
for the Estate of Barry Portnoy

**ASSIGNEE:**

EVC TURNPIKE DR., LLC

By: _____
        Name: Elliot Teitelbaum
        Title: Member

19

EXHIBIT "D"

Schedule of Permitted Exceptions

1.    Lease Agreement dated May 21, 2016, between Barry Portnoy and East Coast Spas, LLC.

2.    Any variation in location of lines or dimensions or other matters which an accurate survey would disclose.

3.    Easements, or claims of easements, not shown by the Public Records.

4.    Title to that part of the premises lying in the bed and right of way of all roads, driveways and alleyways is subject to public and private rights therein.

5.    Declaration of Condominium as in Deed Book 2537 page 278, Plan Exhibit in Plan Book 220 page 84-85, amendments in Deed Book 2538 page 94 and Land Record Book 464 page 1237, and the By-Laws of the Southampton Industrial Mews Upper Southampton Township, Bucks County, Pennsylvania.

6.    Right of way granted to Philadelphia Electric Company and The Bell Telephone Company of Pennsylvania as in Deed Book 1401 page 130.

7.    Easement Agreement as in Deed Book 2044 page 1196.

8.    Right of way granted to The Bell Telephone Company of Pennsylvania as in Deed Book 2047 page 802.

9.    Right of way granted to Philadelphia Electric Company as in Deed Book 2053 page 487.

10.    Title to that portion of the premises in the beds of Industrial Boulevard and Gravel Hill Road is subject to public and private rights therein.

11.    Stream flows through premises; subject to the riparian rights of bounding owners.

12.    The standard or printed exclusions and exceptions in the form of owner's title insurance policy for the Real Property which the Title Company is unwilling to remove notwithstanding delivery of the Seller's closing affidavit(s).

13.    The lien for any real estate taxes not due and payable on or before the Closing Date.

14.    Any special assessment levied or pending against the Real Property which is not yet due and payable.

15.    Building, zoning and subdivision laws, regulations, ordinances and requirements.

20