

**Schnader**
ATTORNEYS AT LAW

1600 MARKET STREET    SUITE 3600
PHILADELPHIA, PA 19103-7286
215.751.2000    FAX 215.751.2205    schnader.com

July 31, 2017

Jonathan W. Hugg
Direct Dial 215-751-2527
Direct Fax 215-751-2205
E-Mail: Jhugg@schnader.com

**VIA E-MAIL**

The Honorable Magdeline D. Coleman
United States Bankruptcy Judge
for the Eastern District of Pennsylvania
Robert N.C. Nix Sr. Federal Courthouse
900 Market Street, Suite 202
Philadelphia, PA

**Re: Barry Portnoy, Case No. 14-16081-mdc**

Dear Judge Coleman:

In his July 17, 2017 letter, Mr. Kaskey admits that he threatened to report me to the Disciplinary Board – "unless" I retracted what he contends are "multiple misrepresentation" made to Your Honor. As I explain below, I made no misrepresentations. This is nothing but a calculated move to gain advantage by attacking me personally, with the threat of a stain on my law practice and ability to earn a living.

Before considering the substance of Mr. Kaskey's charge against me, the Court should note that Mr. Kaskey violated accepted procedure by trying to use a threat of reporting me for an alleged ethics violation to gain advantage for his client in litigation. That is not how we should be practicing law here in Philadelphia or anywhere else. Ethics authorities condemn this precise quid quo pro tactic.[1] If Mr. Kaskey thought I got the facts wrong, then he should have filed a reconsideration motion addressing the merits and attached the hearing transcript. That is the procedure when a lawyer in good faith desires to challenge an adverse ruling or bring attention to what he or she believes are inaccuracies in opposing counsel's statement to the Court. Your Honor will recall that Mr. Kaskey's partner has already sued me personally for other statements I allegedly made. Taken together, the lawsuit against me and the threat to create a disciplinary problem for me appear to be a purposeful effort to distract attention from the merits of this case, cast debtor as the victim, and harass me.

As for the substance, it is wrong for Mr. Kaskey to argue that several isolated moments of the fifty minute audio transcript of the June 28, 2017 hearing somehow prove that I violated Rule of Professional Conduct 3.3(a)(1) by making false statements of material fact to Your Honor.

---

[1] E.g., "The Ethics of Threatening," Kores, Litigation, Vol. 43, No. 3, 42, 43-44 (American Bar Association, Spring 2017).

# Schnader
ATTORNEYS AT LAW

The Honorable Magdeline D. Coleman
July 31, 2017
Page 2

First, none of Mr. Kaskey's citations to the record are accurate. He cites 12:31:43 and 12:48:02 for me stating that debtor possessed no prepetition or post-petition bank accounts, and 12:35:13 for me stating that I had not examined debtor about his post-petition bank accounts or finances. However, at 12:31:43, I made a statement about the legal spending by debtor and his family. At 12:48:02, Your Honor spoke about debtor's obligation to disclose. At 12:35:13, Mr. Kaskey spoke about the extent of discovery.

When Mr. Kaskey telephoned me, it was unfair of him to refuse to identify my specific, alleged misrepresentations, as I requested. Mr. Kaskey's has now compounded this unfairness by forcing me to search through the record and speculate about the exact basis for his allegations against me. I note that elsewhere in the audio transcript, at 12:32:36, I stated that debtor alleged that he had no bank account. At 12:38:16 and 1:00:08, I stated that debtor only used cash. At 12:48:53 and 12:49:00, I stated that it was unknown if debtor had a checking account. At 12:48:56, counsel for the Chapter 7 Trustee agreed with me. At 12:49:02, I stated that it was assumed that a checking account existed. At 12:49:13, Mr. Kaskey stated that there were pre-petition checking accounts. At 12:49:29, Your Honor indicated that Your Honor understood that there were checking accounts. Your Honor clearly accepted that debtor had a checking account. That is why the Order (to which Mr. Kaskey agreed) called for the production of account information.

Nowhere in that exchange or elsewhere did I make any false statements of material fact. The fact is that the record in this case is unclear and confusing on the subject of debtor's accounts, because debtor has made multiple conflicting statements on this subject. On August 19, 2014 debtor filed a Schedule B, and on September 8, 2014 debtor filed an Amended Schedule B, both of which indicated that debtor had no cash on hand or financial accounts. Doc. No. 18 at p. 2; Doc. No. 27 at p. 1. On January 12, 2015, debtor testified that his only cash was "$127 in my pocket right now" but otherwise he had no cash and no bank account. Transcript at pp. 59-62. On May 20, 2015, debtor again testified that had no cash and no bank account. Transcript at p. 16, 73. Debtor stated that he did not open a post-petition account because he was afraid of it being garnished. Id. at pp. 73-74. On September 11, 2015, debtor testified that he had opened a bank account in early 2015. Transcript at 198. <u>On February 19, 2016, debtor filed a second Amended Schedule B again indicating that he had no cash on hand or financial accounts</u>. Doc. No. 257, p. 1.

Quite clearly, debtor alone is the source of uncertainty and confusion on my part about his finances. Indeed, this may be part of debtor's asset preservation strategy. It remains unknown how debtor is financing all of his many attorneys, including to sue me and my client and now to file a disciplinary complaint against me. It is a fair question if debtor is funding his lawyers with pre-petition assets that properly belong to the estate.

# Schnader
ATTORNEYS AT LAW

The Honorable Magdeline D. Coleman
July 31, 2017
Page 2

Your Honor will also recall that there was extensive motion practice to compel debtor to produce his tax returns. There are three pending adversary actions arising from debtor's lack of transparency. Republic's summary judgment motion in its adversary matter details the persistent obstructionism of debtor. Since the filing of the motion, debtor failed to disclose the rent he collected from the 1320 Industrial property.

Unfortunately, it is difficult to keep debtor's stories straight, as there are persistent and justifiable doubts about the facts of debtor's finances. In any event, I made no false statements of material fact to Your Honor, did not violate Rule 3.3(a)(1), and have done nothing wrong. The only thing that I might conceivably have done differently at the June 28 hearing is note to Your Honor that there have been many inconsistencies in debtor's statements and offer to brief the subject with citations to the record, but as it did not appear material to the hearing I did not even think about it, and even in retrospect I do not think it was necessary for the record.

At the conclusion of the June 28, 2017 hearing, Your Honor directed counsel to deescalate the rancor in this case. Audio Transcript at 1:07:00. Mr. Kaskey obviously ignored this instruction.

I ask that Your Honor make a finding that there is no substance to Mr. Kaskey's charge against me and that he be admonished for violating your direction to counsel to improve the level of civility in the case and for making a baseless charge against me. In the alternative, if Mr. Kaskey will state in writing that he withdraws his accusations and will endeavor to follow Your Honor's direction that counsel should improve the level of civility in this case, I will consider this subject closed without the need for a ruling from Your Honor, as we do not need sideshow litigation on this subject.

Respectfully,

*[signature]*

Jonathan W. Hugg
For SCHNADER HARRISON SEGAL & LEWIS LLP

JWH

cc: John E. Kaskey, Esquire
Gary Seitz, Esquire
Kevin Callahan, Esquire
Al Belmont, Esquire